```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JOHN RIGGI,                                      :

                Petitioner,                      :   04 Civ. 7852 (JSR) (GWG)

        -v.-                                     :   REPORT AND
                                                     RECOMMENDATION
UNITED STATES,                                   :

                Respondent.                      :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

John Riggi, appearing pro se, brings this petition for writ of habeas corpus under 28 U.S.C. § 2255. Riggi pled guilty to one count of conspiracy to murder in furtherance of racketeering and was sentenced to 120 months of incarceration. He argues that he was improperly sentenced and that he was denied effective assistance of counsel. For the reasons stated below, Riggi's petition should be denied.

I. BACKGROUND

    A. Indictment

On October 18, 2000, the Government charged John Riggi and twenty-one other members of the Decavalcante Organized Crime Family of La Cosa Nostra as part of a racketeering conspiracy. See Government's Memorandum of Law in Opposition to Defendant John Riggi's Section 2255 Motion, dated Jan. 5, 2007 (Docket #649 in 00 Cr. 1118) ("Opp'n") (citing Indictment No. 00 Cr. 1118 (Docket #1 in 00 Cr. 1118)), at 3. The indictment charged Riggi with three murders, conspiracy to commit six murders, extortion and obstruction of justice. Id. at 4 (citing Indictment ¶¶ 13, 15(b), 16, 18, 23-24, 30).

    B. Plea Agreement

On September 4, 2003, Riggi executed a plea agreement with the Government. See Opp'n at 4-5; see also Letter from John Hillebrecht to Donna R. Newman, dated Aug. 26, 2003 ("Pl. Ag.") (reproduced as Ex. B to Declaration of John M. Hillebrecht, dated Jan. 5, 2007 (Docket #650 in 00 Cr. 1118) ("Hillebrecht Decl.")). The plea agreement stipulated that upon Riggi's plea of guilty to conspiracy to murder, as charged in a superseding information, see Ex. D to Hillebrecht Decl., the United States Sentencing Commission Guidelines Manual required an offense level of 40 and a sentencing range of 360 months' to life imprisonment. See Pl. Ag. at 3-4. The parties further agreed that Riggi's sentence – referred to as the "Stipulated Guidelines Sentence" – was capped at a statutory maximum of 120 months. See id. at 4. In exchange for his plea, the Government agreed to dismiss the indictment's remaining counts against Riggi. Id. at 2.

The agreement provided that Riggi would not "file a direct appeal from, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence at or below the Stipulated Guidelines Sentence . . . (10 years' imprisonment) . . . ." Id. at 5. The agreement also noted that "[t]he Government agrees to take no position with respect to a defense request that the Stipulated Guidelines Sentence run concurrently to any undischarged portion of the prison sentence," id. at 4, that Riggi was serving based on a prior judgment of conviction in the Eastern District of New York. See Opp'n at 8 n.6.

After the instant petition was filed, Riggi's attorney, Donna Newman, provided an affirmation stating that before Riggi signed the plea agreement, she flew down to Butner, North Carolina, where she met with Riggi "for several hours" and "explained fully the terms of the plea agreement, including the appellate waiver." Attorney's Affirmation, dated Jan. 2, 2007

2

(reproduced as Ex. F to Hillebrecht Decl.) ("Newman Aff."), ¶10. Prior to the plea allocution, Newman again reviewed the agreement with Riggi "in person." Id. ¶ 11.

C. Plea Allocution

On September 4, 2003, Riggi, appearing by video conference from the Federal Medical Center in Butner, North Carolina, entered a guilty plea before Judge Michael B. Mukasey. Opp'n at 5; see generally Plea Transcript, dated Sept. 4, 2003 (reproduced as Ex. C to Hillebrecht Decl.) ("Pl. Tr."). After hearing from Riggi as to his various medical conditions, his recent surgery and his ongoing use of medication, Judge Mukasey determined that Riggi was competent to enter an informed plea and that he understood the rights he was waiving by entering a plea of guilty. (Pl. Tr. 3-6). During the plea allocution, Riggi confirmed that he had reviewed the superseding information containing the charge against him, id. at 9; understood the charge against him, id. at 9-12; discussed his case with his attorney, id. at 6; and was satisfied with his attorney's representation, id.

Riggi confirmed that his attorney had explained to him all of the terms and conditions of the plea agreement before he signed it, and that he understood that the sentence could be "no longer than ten years." Id. at 13. He also stated that he understood that he was giving up his right to challenge any sentence "assuming that it's ten years or less . . . ." Id. at 16. Riggi also acknowledged that "any sentence that [the Court] impose[d] . . . could be consecutive . . . ." Id. at 11. At the conclusion of the allocution, Riggi's counsel submitted a signed copy of an advice-of-rights form to the court. Id. at 20.

D. Sentencing

On September 26, 2003, Riggi appeared – again by video conference – before Judge

Mukasey for sentencing.  See generally Sentencing Transcript, dated Sept. 26, 2003 (reproduced as Ex. E to Hillebrecht Decl.) ("S. Tr.").  Although Riggi waived the preparation of a Presentence Report by the Probation Department, the record reflects that he submitted various letters to Judge Mukasey, see id. at 2, which discussed, inter alia, Riggi's "numerous ailments," id. at 7.  Riggi's counsel again raised the issue of Riggi's health at the sentencing proceedings, indicating that he had a torn rotator cuff in his shoulder which was likely to require surgery, the possibility of colon cancer, a heart murmur and severe arthritis.  See id. at 7-8.  She also stressed Riggi's age – 78 years old, see id. at 7, and the fact that he would be "in pain" as a result of his pending operation, id. at 8.

Defense counsel requested that the sentence run concurrently with the time remaining on his previous federal sentence, amounting to approximately 10 months of unexpired time, id. at 6, 9-11, and supported the request with various letters indicating Riggi's charitable contributions to various organizations, id. at 7.  Judge Mukasey sentenced Riggi to 120 months, with all but three months to run consecutive to his prior sentence.  Id. at 12.  Judge Mukasey advised Riggi that "[w]hatever right [he] retains to appeal, he may press," and that appellate counsel would be appointed if need be.  Id. at 13.  A judgment of conviction was entered on June 2, 2004.  See Opp'n at 26.  Riggi did not file a notice of appeal.

E.  The Instant Petition

Riggi's petition is dated August 30, 2004.  See Petition, filed Oct. 4, 2004 (Docket #1 in 04 Civ. 7852); Memorandum in Support of Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, filed Oct. 4, 2004 (Docket #2 in 04 Civ. 7852).  On February 3, 2005, Riggi filed a document entitled "Petitioner's Motion for Leave to Supplement Sixth Amendment [sic] Raised

in 28 USC § 2255 and Specific Sixth Amendment Argument of Counsel Abandoning Petitioner's Right to Direct Appeal." See Docket ## 537, 655 in 00 Cr. 1118 ("Pet. Mem.").[1]  Then, in December 2005, Riggi submitted a document entitled "Petitioner's Motion in Propria Persona for Clarification and Request for Appointment of Substitute Counsel for Evidentiary Hearing on Sixth Amendment Claim," which was never docketed and appears as an exhibit to the Government's opposition papers. See Ex. A to Hillebrecht Decl. ("Second Pet. Mem."); see also Opp'n at 2 n.1.[2]

The Government responded to the habeas petition on January 5, 2007. See Opp'n; Hillebrecht Decl. Riggi thereafter submitted three documents: "Petitioner's Motion for an Order of Scheduling to Conduct an Evidentiary Hearing on the Constitutional Claims Raised Pursuant to 28 U.S.C. § 2255" ("Third Pet. Mem."), filed Jan. 8, 2007 (Docket #6 in 04 Civ. 7852); "Petitioner's Pro Se Traverse to the Government's Memorandum of Law in Opposition to a Motion Filed Pursuant to 28 U.S.C. § 2255" ("Traverse"), filed Feb. 5, 2007 (Docket #7 in 04

---

[1] This document is apparently the document referred to in docket entry # 537 (in 00 Cr. 1118). The original filing associated with docket entry # 537, however, is missing from the official court file. Accordingly, the Court directed Riggi to provide another copy to the Court. See Order, filed June 1, 2007 (Docket #654 in 00 Civ. 1118). Riggi did so, but apparently signed it once again, dating it June 5, 2007. The Court docketed this recently-dated version of the document as Docket # 655 in 00 Cr. 1118.

[2] It appears that Riggi submitted the December 2005 motion in response to a letter he received from Newman in November 2005. See Second Pet. Mem. at 3. Newman's letter – addressed to Judge Mukasey and not included in the submission – apparently referenced a hearing pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), which, unbeknownst to Riggi, had been scheduled for November 8, 2005 at 9:15 a.m. and requested that he be present for the hearing via video conferencing. See id. at 3. According to Riggi, he did not participate in any Crosby hearing and does not know if one occurred, but received a copy of his criminal judgment "on or about November 17, 2005." Id. The record does not reflect, however, that any such hearing took place.

Civ. 7852); and "Petitioner's Pro Se Traverse to the Government's Opposition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255" ("Second Traverse"), filed May 29, 2007 (Docket #8 04 Civ. 7852).

Riggi's original petition claimed that his "120 month consecutive sentence violate[d] the 8th Amendment's Prohibition Against Cruel and Unusual Punishment." Petition at 10-11. He also raised a claim of ineffective assistance of counsel based on the following three grounds: (a) "[d]efense counsel was ineffective for not proving that defendant's consecutive sentence was improper because of the double jeopardy clause of the Fifth Amendment and Sentencing Guideline § 5G1.3(b)," see id. at 2-6; (b) "[d]efense counsel was ineffective for not thoroughly investigating and presenting defendant's age and medical condition in arguing for a concurrent sentence during defendant's sentencing hearing on 9/26/03," see id. at 6-9; and (c) "[d]efense counsel was ineffective for not asking the judge to sentence defendant to home confinement rather than prison," see id. at 9-10.

Riggi's subsequent submissions raise an additional claim: that his counsel "failed to file a direct appeal at petitioner's specific request." See Pet. Mem. at 2; Second Pet. Mem. at 2 n.1. Riggi also seeks an evidentiary hearing on whether he asked his counsel to file a notice of appeal. See Third Pet. Mem.; Traverse at 8; Second Traverse at 9.

II. DISCUSSION

    A. Law Governing Review of Section 2255 Petitions

28 U.S.C. § 2255 provides:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

6

>the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under this statute is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotations marks and citations omitted).

    B.  Claims Raised in Riggi's Original Petition

As noted, the claims in Riggi's petition allege that his trial counsel was ineffective by failing to argue that his consecutive sentence was improper, see Petition at 2-6; by failing to investigate and present Riggi's age and medical condition at sentencing, see id. at 6-9; and by not asking the judge to sentence defendant to home confinement rather than prison. See id. at 9-10. Riggi also contends that the 120 month consecutive sentence violates the Eighth Amendment's Prohibition Against Cruel and Unusual Punishment. See id. at 10-11.

Riggi faces a threshold problem, however, with presenting this § 2255 petition. As part of his written plea agreement and plea allocution, Riggi expressly waived his right to seek relief under section 2255 with respect to any sentence at or below 120 months. Pl. Ag. at 5; (Pl. Tr. 16). Accordingly, the Government argues that the agreement should be enforced and all these claims dismissed.

    1.  Law Governing Effect of the Waivers in Plea Agreements

Generally, a knowing and voluntary waiver of the right to file a motion under 28 U.S.C. § 2255 is enforceable. See United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004); Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (enforcing waiver of

appeal and collateral attack in plea agreement because defendant entered into the plea knowingly and voluntarily); accord Pena v. United States, 201 F. Supp. 2d 231, 233-35 (S.D.N.Y. 2002). As noted in United States v. Rosa, 123 F.3d 94 (2d Cir. 1997), a plea agreement is valuable to both defendants and the Government: it gives the defendant "reasonable certainty as to the extent of his liability and punishment," while the Government avoids the expense and uncertainty of future litigation. Id. at 97.

To preserve the value of plea agreements, the Second Circuit has held – in the context of the waiver of a right to appeal – that:

> [i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.) (per curiam), cert. denied, 509 U.S. 931 (1993). The same principle applies to a waiver of a right to file a section 2255 petition. See, e.g., Garcia-Santos, 273 F.3d at 509; Flores v. Untied States, 2007 WL 766308, at *3 (S.D.N.Y. Mar. 14, 2007). A waiver may be set aside only in limited situations. See, e.g., United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (waiver of appellate rights may be set aside where "not knowing, voluntary, or competent"; where a "sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases"; where, "the Government breached the plea agreement"; or where "the sentencing court failed to enunciate any rationale for the defendant's sentence") (citations omitted).

    2. Discussion

Here, the plea agreement explicitly stated that Riggi waived his right to challenge under

8

28 U.S.C. § 2255 any sentence of 120 months or less.  Pl. Ag. at 5.  Riggi confirmed that he understood all the terms and conditions of the plea agreement, that he had signed it voluntarily, and that no promises were made to him outside of the agreement.  (Pl. Tr. 12-14).  Moreover, Riggi stated that he understood that he "agreed not to take any appeal from the prosecution or sentence assuming it's ten years or less."  Id. at 16.  He received a sentence of 120 months.  (S. Tr. 12).  Because the record "clearly demonstrates" that the plea agreement was knowing and voluntary – indeed, Riggi provides no suggestion otherwise – it is enforceable.  See Monzon, 359 F.3d at 116; accord Philippe v. United States, 2007 WL 13414, at *1 n.2 (E.D.N.Y. Jan. 2, 2007).  Consequently, the plea agreement bars Riggi from bringing a section 2255 motion to challenge his sentence.  See generally United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001) (per curiam) (enforcing section 2255 waiver).  Riggi does not assert facts that bring his claims within any of the exceptions to the enforceability of plea agreements (except as described in section II.C below).

That Riggi has brought claims of ineffective assistance of counsel does not alter this conclusion.  Because there is "no general bar to a waiver of collateral attack rights in a plea agreement," Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citing Garcia-Santos, 273 F.3d at 509), cert. denied, 537 U.S. 1146 (2003), such an agreement may waive a defendant's right to file a habeas petition asserting claims of ineffective assistance of counsel.  Nonetheless, "a waiver of . . . collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."  Id. (citing Hernandez, 242 F.3d at 113-14).  Accordingly, where there is a claim of ineffective assistance of counsel that calls into question the legitimacy of the waiver itself, the waiver will

9

not foreclose a section 2255 petition.  See, e.g., United States v. Ballesteros, 2007 WL 778051, at *3 (S.D.N.Y. Mar. 16, 2007).

Here, none of Riggi's claims of ineffective assistance of counsel call into question the waiver itself.  Rather, they all relate to purported failings on Newman's part with respect to arguments she made (or failed to make) at the sentencing proceeding.  That the failings occurred after the waiver is of no moment since a waiver of section 2255 rights "applies to grounds that arise after, as well as before, [the defendant] made the waiver."  Garcia-Santos, 273 F.3d at 509.

In sum, Riggi's agreement not to challenge his sentence is enforceable even in the face of a claim of ineffective assistance of counsel during the sentencing phase.  In a similar circumstance – involving a waiver of the right to appeal – the Second Circuit barred any consideration of an ineffective assistance of counsel claim, noting that "[i]f we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless."  United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998).  The same rationale applies to the waiver of a challenge pursuant to section 2255.  Thus, any challenges to Newman's alleged ineffectiveness at sentencing have been waived.

  C. <u>Claim Regarding Failure to Appeal</u>

In February 2005, Riggi sought to supplement his Sixth Amendment claim of ineffective of counsel.  See Pet. Mem. at 1.  Riggi stated that his attorney "failed to file a direct appeal at petitioner's specific request." Id. at 2.  Riggi's other submissions make similar reference to such a request.  See Second Pet. Mem. at 2 ("[p]etitioner had expressly requested that counsel file a direct appeal on his behalf"); Third Pet. Mem at 1 ("counsel of record failed to file a direct

appeal of the conviction and sentence, or even notice thereof, after being requested to do so after sentencing"). Riggi requests that the Court hold an evidentiary hearing on this issue. Third Pet. Mem.; Traverse at 8; Second Traverse at 9.

Riggi's claim that Newman failed to file a notice of appeal following his express direction would, if true, constitute ineffective assistance of counsel. See, e.g., Fernandez v. United States, 146 F.3d 148, 149 (2d Cir. 1998) (per curiam) (ineffective assistance shown where counsel "ignor[ed] a defendant's explicit direction to file an appeal"). In addition, the waiver of rights under section 2255 does not bar such a claim. See generally Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006) (claim of ineffective assistance based on failure to file a notice of appeal unaffected by plea agreement waiving right to appeal). Accordingly, we now consider the claim on the merits.

As discussed further below, Newman has submitted an affidavit asserting that Riggi made no request to file a notice of appeal. To decide the mechanism for resolving this factual conflict, we turn first to the text of section 2255, which provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255.

Because Riggi's petition does not allow us to "conclusively" determine the question of whether he sought to have a notice of appeal filed, the statute directs that a "hearing" be held. It does not, however, explain the nature of such a "hearing." In Chang v. United States, 250 F.3d 79 (2d Cir. 2001), the Second Circuit held that the reference in the statute to notice given to "the

11

United States attorney" only – that is, without mentioning the petitioner – reflects that "'there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" Id. at 85 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see 28 U.S.C. § 2255 ("A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."). Thus, Chang held that, depending on the allegations in the petition, a "court may use methods under [§] 2255 to expand the record without conducting a full-blown testimonial hearing." Chang, 250 F.3d at 86 (citing Blackledge v. Allison, 431 U.S. 63, 81-82 (1977)). Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'" Id. (quoting Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970)).

In this case, Newman, Riggi's attorney, has submitted an affidavit on the issue of whether Riggi requested that she file a notice of appeal. See Newman Aff. In that affidavit, Newman summarizes in detail her recollection regarding efforts she made with respect to Riggi's plea and sentence. Id. ¶¶ 8-19. She states that, before Riggi signed the plea agreement, she reviewed with him its terms including the waiver of the right to appeal. Id. ¶ 10. She undertook the same review prior to the plea allocution. Id. ¶ 11. Immediately after the sentencing, Newman met with Riggi "in a separate room." Id. ¶ 16. She "emphasized the plea waiver, but asked whether or not Mr. Riggi would like [her] to file a notice of appeal." Id. Newman reports that "[i]n light of my explanation, Mr. Riggi advised that it was not necessary." Id. Following this meeting, Riggi's family was in touch with Newman and collected files from her office. Id. ¶ 17. At no time did they ask about the status of Riggi's appeal or ask whether a notice of appeal had been filed. Id. In addition, during the pendency of his case, Riggi wrote Newman "numerous times,"

including "lengthy" letters that "included suggestions on how to approach the defense." Id. ¶ 18. "Never did [Riggi] request that a notice of appeal be filed or inquire as to the status of his appeal." Id.

In Chang, the Second Circuit held that, where a petitioner and his counsel submitted conflicting affidavits on the question of whether defense counsel had denied the defendant the opportunity to testify in his own defense, the district court could properly conclude that "the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions." 250 F.3d at 86.  Chang found this particularly true because the petitioner relied "solely on his own highly self-serving and improbable assertions" and the petitioner's counsel gave a "detailed description of events [that] was eminently credible." Id.

This is precisely the situation here.  Riggi has said only in the most conclusory terms that he instructed his counsel to file a notice of appeal.  He does not give the dates or locations of any conversations with Newman or detail the nature of such conversations – including why he thought he would have the right to appeal given the fact that he had waived any such right. See generally Shef v. United States, 2007 WL 812104, at *5 (E.D.N.Y. Mar. 14, 2007) (declining to credit petitioner's contention that he requested that a notice of appeal be filed where petitioner did not state "which of his two attorneys he asked to file a notice of appeal, the time and means that he communicated this request, and the grounds on which he planned to appeal").  None of Riggi's contentions about his direct appeal appear in a document executed under penalty of perjury.[3]  Indeed, they are all written in the third person.  It is not even clear to what extent any

---

[3]While Riggi states in one of his submissions that he "submitted an affidavit concerning his request that counsel prosecute an appeal," Second Traverse at 9, the Court is unaware of any such document.

statements in Riggi's papers are his own inasmuch as one submission states that "[a]ll of the motions and follow up letters were filed pro se by a prisonmate on behalf of Mr. Riggi." Third Pet. Mem. at 2 n.3; see also Traverse at 1 (Riggi "has been prosectuing his actions in and to this court with the aid of 'Next Friend' prison litigators"); Second Traverse at 1 (Riggi is proceeding "with the aid of a 'Next Friend' prison mate"). Some of Riggi's papers are explicitly written from the point of view of someone helping Riggi. See, e.g., Traverse at 2 ("this particular litigator . . . has been the individual who has argued on behalf of petitioner from the time of the 'Motion for Leave to Supplemental' [sic] his original § 2255 motion[]").

Newman's account, by contrast, is contained in a sworn affidavit, written in the first person, highly detailed, and internally logical. Given that Newman's "description of events [is] eminently credible," Chang, 250 F.3d at 86, there is no reason to hold an evidentiary hearing on this matter and the Court should find that there was no request to file a notice of appeal. Courts faced with similar circumstances – an assertion by a petitioner that he requested to file a notice of appeal and an attorney affidavit contradicting this assertion – have similarly denied habeas petitions without an evidentiary hearing. See, e.g., Lebron v. United States, 2007 WL 1159646, at *4 (S.D.N.Y. Apr. 18, 2007); Shef, 2007 WL 812104, at *5; Lopez v. United States, 2006 WL 2020389, at *2-3 (S.D.N.Y. July 12, 2006) (citing cases); cf. Muyet v. United States, 2004 WL 1746369, at *6-7, 9 (S.D.N.Y. Aug. 3, 2004) ("Without any sort of evidence other than his own tenuous claims, a court may dismiss a petition without a hearing.") (denial of right to testify).[4]

---

[4] In a footnote to his December 2005 submission, Riggi asserts that he "entered a plea of guilty based upon material misrepresentations of facts and law made by counsel of record, as to the sentence he would receive . . . ." Second Pet. Mem. at 2 n.1. To the extent Riggi means to seek leave to add a new claim to the petition, it would have to be denied as untimely inasmuch as this filing came well past AEDPA's one-year statute of limitations and this particular claim

Conclusion

For the foregoing reasons, Riggi's petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS**
**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 5, 2007
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

cannot be said to relate back to his original claims. See Mayle v. Felix, 545 U.S. 644, 662-64 (2005). In any event, Riggi provides no explanation concerning what "misrepresentations" were made by his counsel as to the sentence he would receive. See, e.g., Harris v. United States, 2005 WL 1925435, at *3 (S.D.N.Y. Aug. 10, 2005) (petitioner's claim that he was coerced by his attorney into pleading guilty "cannot satisfy the first prong of the" Strickland v. Washington, 466 U.S. 688 (1984) "test because it is conclusory and contradicts his sworn statements at the plea allocution[]").

15

Copies sent to:

John Riggi
USMS # 12317-016
Devens Federal Medical Center
P.O. Box 879
Ayer, MA 01432

John Hillebrecht
Miriam Rocah
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, NY  10007

Hon. Jed S. Rakoff
United States District Judge

Conclusion

For the foregoing reasons, Riggi's petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 5, 2007
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

cannot be said to relate back to his original claims. See Mayle v. Felix, 545 U.S. 644, 662-64 (2005). In any event, Riggi provides no explanation concerning what "misrepresentations" were made by his counsel as to the sentence he would receive. See, e.g., Harris v. United States, 2005 WL 1925435, at *3 (S.D.N.Y. Aug. 10, 2005) (petitioner's claim that he was coerced by his attorney into pleading guilty "cannot satisfy the first prong of the" Strickland v. Washington, 466 U.S. 688 (1984) "test because it is conclusory and contradicts his sworn statements at the plea allocution[]").

15